IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA M. BROWN, | : | |
| Plaintiff, | : | CASE NO. 3:07-cv-818 |
| v. | : | JUDGE CARR |
| HCF OF SHAWNEE, INC., | : | |
| Defendant. | : | |

**PLAINTIFF TINA M. BROWN'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff Tina M. Brown ("Brown"), and hereby proffers this Motion to obtain summary judgment on liability for Defendant HCF of Shawnee, Inc.'s ("HCF") violation of the Family Medical Leave Act ("FMLA"), and for the immediate imposition of the equitable remedy of reinstatement to employment. Brown asserts that HCF is liable because it discharged her, thereby committing a violation of the black letter law of the FMLA.

**I. Statement of the Case**

On March 20, 2007, Brown filed a one-count Complaint against HCF alleging a wrongful discharge in violation of the FMLA. Discovery has been completed.

**II. Statement of the Facts**

**A. Brown was taking intermittent FMLA-protected leave to care for her father who had a serious health condition.**

Brown began working for HCF in September of 2003, and worked there continuously until her discharge on March 28, 2005. (Brown Aff. ¶ 2) In March of 2005, Brown's father was suffering the effects of severe spinal stenosis, a debilitating condition that required care from

other family members to assist him with daily needs. (Brown Aff. ¶ 9-11)  Brown had, in fact, requested, and was approved for, intermittent FMLA days off to help care for her father for one year from July 16, 2004 (which made it through what came to be the end of her employment). (Schmehl Tr. 12; Brown Aff. ¶ 4; Ex. 1)

>   **B. HCF's notice policies clashed with the fact that Brown was on FMLA-protected leave.**

The policy of HCF was that when nurse's aide's such as Brown called off for a shift was that they were to call the Charge Nurse on the previous shift and give a reason for their absence. (Schwier Tr. 11-12; Brown Aff. ¶ 5)  The Charge Nurse would then write down the reason on an Absence Report. (Schwier Tr. 11-12; Ex. 2)  Charge Nurse Gerry Schwier ("Schwier") remembers taking such calls from Brown. (Schwier Tr. 11)  When asking for days off to care for her father, Brown specifically referenced the fact that the absence was to care for her father when stating she needed the time off. (Brown Aff. ¶ 6)  When asking for time off to care for her father, Brown called off in a timely fashion for all days for which she was scheduled to work. (Brown Aff. ¶ 6)  When Brown called in regarding taking care of her father, HCF often expressed its disappointment and dislike regarding the absences. (Brown Aff. ¶ 7; Schwier Tr. 16)

>   **C. HCF had a "pick-up" day system as part of its scheduling scheme.**

On March 21, 2005, Brown was scheduled to work, but called off absent to care for her father. (Brown Aff. ¶ 8; Brown Aff. Ex. A)  Brown was not scheduled to work March 22 and 23, 2005, but had listed these days as potential "pick-up days." (Brown Aff. ¶ 11; Brown Aff. Ex. A) "Pick-up days" were days that an employee was not on the original schedule for, but for which the employee could be called upon to work if needed. (Schwier Tr. 17-18; Brown Aff. ¶ 8) Generally, employees were called in advance (usually the day before) and asked to work a day

2

for which they had marked "pick-up." (Schwier Tr. 18-19; Brown Aff. ¶ 8)  Employees who had offered to "pick-up" days were not required to check the schedule to see if they worked those days, and could refuse to work if asked without penalty. (Schwier Tr. 19, 22; Brown Aff. ¶ 8) Schedules for each day were often not posted until a couple of hours before the first of that day's shifts began, meaning that the only way for a potential "pick-up" employee to know they were needed was for them to be called.[1] (Schwier Tr. 18, 25-26)

> **D. Brown gave proper notice under the FMLA for every day for which she had reason to know she was scheduled, but had no reason to know she was scheduled for March 23, 2005.**

On March 22, 2005, Brown went over and above the norm by calling in to make sure she was not scheduled because she needed to take care of her father. (Brown Aff. ¶ 10; Ex. 2) Brown was not in the workplace at all on March 21 or 22, 2005, because of taking care of her father, and did not call in for March 23, 2005 because she was not on the schedule and had not been informed that she was needed for a "pick-up" day. (Brown Aff. ¶ 11)  Brown was taking care of her father on March 23, 2005. (Brown Aff. ¶ 11)  The schedule for March 23, 2005, had not been posted by the end of Brown's last shift worked before taking days off to care for her father, which was at 7:00 a.m. March 21, 2005. (Brown Aff. ¶ 11)  Brown flatly denies HCF's claim that she ever said she knew she was scheduled to work on March 23, 2005, or that she had "forgotten" she had to work. (Brown Aff. ¶ 14)  Brown did not know that she was scheduled to work March 23, 2005, and normal practice did not require her to appear at the workplace that day, or to call off of work, unless she was told in some manner that that she was needed to work that day. (Schwier Tr. 19, 22; Brown Aff. ¶ 8)

---

[1] Administrator Scott Unverferth attempted to make that time more palatable but even he did not contend that the schedules were posted more than a day in advance. (Unverferth Tr. 23)

3

### E. Brown was allegedly discharged under HCF's no fault attendance point system for not appearing on March 23, 2005.

Brown was allegedly discharged by HCF because her alleged "no-call/no-show" on March 23, 2005, put her at four (4) attendance points in HCF's no fault attendance regimen. (Brown Aff. ¶ 13; Ex. 4 [which mistakenly designates the NC/NS day as March 22, 2005])

## III. Law and Argument

HCF is not entitled to summary judgment because either (1) Brown was unaware of her requirement to work on March 23, 2005, at least in part because she was absent on FMLA-protected leave on March 21 and 22, 2005; and/or (2) Brown was absent for FMLA-protected reasons on March 23, 2005, and would have reported thus had she been informed under HCF's normal procedures that she was scheduled for the "pick-up" day.

### A. Legal standards for summary judgment

#### 1. Basic summary judgment standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact. <u>Celetox Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986). When the moving party is also the party that will carry the burden of persuasion at trial, the moving party must present materials specified by Rule 56(c) that would entitle it to a directed verdict if not contraverted at trial. <u>Celetox Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986) (Brennen Dissenting).

4

**2. The Court must utilize the proper legal standards for Brown's FMLA claim.**

To prevail on her claim against HCF for its violation of the FMLA, Brown must establish the following by a preponderance of the evidence, which is a minor variation of the standard set forth in Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003) that has been accepted by the Sixth Circuit Court of Appeals:

1.  Brown was an eligible employee, as defined in 29 U.S.C. § 2611(2);

2.  HCF was an employer, as defined in 29 U.S.C. § 2611(4);

3.  Brown was entitled to take leave for one of the reasons set forth in 29 U.S.C. § 2612(a)(1);

4.  Brown gave notice of her intention to take leave, as required by 29 C.F.R. §§ 825.302-.303; and,

5.  HCF somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations.

Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007); Bradley v. Mary Rutan Hosp. Assoc., 332 F.Supp.2d 926, 940 (S.D.Ohio 2004).

**3. The McDonnell Douglas burden shifting analysis should not be applied to FMLA claims under 29 U.S.C. § 2615(a)(1), because such claims involve substantive legal guarantees that require no proof of employer intent.**

Within the FMLA, Congress granted two new substantive rights to employees. First, Congress granted employees certain protected rights to use leave provisions within the FMLA. Bachelder v. America West Airlines, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. § 2612(a), § 2614(a)). In addition to providing the right to use leave, Congress also granted employees the right to return to their job after using the leave. Id. Congress determined that

these rights would be a floor or minimum standard for employee leave.  Bachelder, 259 F.3d at 1122 (citing S.Rep. No. 103-3 at 4.)  Because Congress considered these rights to be a minimum floor, these rights are dissimilar or unlike the rights of individuals found within Title VII and other discrimination statutes.  Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 713 (7th Cir. 1997).

Some courts have applied the McDonnell Douglas burden shifting approach to FMLA interference claims.  Bachelder, 259 F.3d at 1124.  However, application of the McDonnell Douglas burden shifting approach to FMLA claims is mistaken.  Id.  The burden shifting approach is clearly appropriate in cases of discrimination.  However, generally, FMLA claims do not deal with discrimination.  Diaz, 131 F.3d at 713.  The Diaz Court has noted that:

> The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant. A firm may treat all employees equally poorly without discriminating. A statute such as the FMLA, however, creates substantive rights. A firm *must* honor statutory entitlements…The FMLA requires an employer to accommodate rather than ignore particular circumstances. In this respect the FMLA is like the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act, all implemented without using the McDonnell Douglas approach. Applying rules designed for anti- discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done.

Diaz, 131 F.3d at 713; *see also* ); Schmauch, 295 F.Supp.2d at 830-31.  The violations at issue in this case are facial violations of black letter legal rights and standards set forth in the FMLA and its accompanying regulations.   Therefore, because these FMLA claims specifically do not involve determinations of discriminatory intent of any kind, and because the black letter rights of the FMLA are a floor for leave rights, and not a statute that commands equal treatment, McDonnell Douglas should not be applied.  McDonnell Douglas was (and still occasionally is) wrongly applied to FMLA cases because courts were confused early on as to what standard too

6

apply, and so reverted to that with which they were familiar. These courts made a convenient, but mistaken choice. The arguments below will demonstrate why the Cavin standard must be law for all FMLA cases.

### 4. HCF's attempt to convince the Court that McDonnell Douglas analysis is appropriate is self-serving misdirection, and cannot be utilized by the Court.

HCF attempts to invoke McDonnell Douglas for the sole purpose of accessing inappropriate legal precepts that would only be viable if the Court accepted the McDonnell Douglas framework. In doing so, HCF adopts the bizarre and indefensible premise that its reason for discharging Brown was not connected to FMLA-protected leave. In fact, the reasons were wholly connected to Brown taking care of her father on March 21-24, 2005. Brown admits that she did not know she was scheduled to work on March 23, 2005, because she was not at the workplace after 7:00 a.m. on March 21, 2005, and the schedule for March 23, 2005, had not been posted before that time. (Brown Aff. ¶ 11) For its part, HCF fails to state when the schedule for March 23, 2005, was posted, and fails to refute Brown's claim that she was taking care of her father on March 21-23, 2005. This does not classify as "unconnected" to the leave in any manner. *see* Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1208 (11th Cir. 2001) (reason must be "wholly unrelated" to the leave).

HCF wants to rely on "comparators" and alleged past practices, i.e. discrimination-style defenses. These defenses do not matter if HCF violated Brown's substantive right not to have an FMLA-related absence counted as a negative factor leading at least in part to her discharge. 29 C.F.R. §825.220(c); Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 726 (6th Cir. 2003). HCF also wants to rely on a supposed need for Brown to prove "pretext" to sustain her claim. Pretext is unnecessary when it was the consequences caused by FMLA-protected leave itself that

7

led to the discharge. HCF is utterly unable to defeat Brown through the <u>Cavin</u> standard, because it is unable to prove that Brown did anything at all wrong in connection with her leave, and is unable to refute that it was the taking of FMLA-protected leave that led to the situation that caused brown's discharge. This is why HCF wrongly attempts to access the <u>McDonnell Douglas</u> standard so as to assert inappropriate discrimination-based defenses. The Court must not be misled, and must follow the letter of law, and not bad case precedent that unlawfully attempts to defeat the law.

**B. HCF violated the FMLA by discharging Brown for events clearly connected to her FMLA-protected leave.**

When HCF's argument is fit into the proper legal framework, it becomes clear that HCF does not dispute the first three (3) <u>Cavin-Wysong</u> elements. HCF plainly disputes the fourth element, notice. It is less clear whether HCF disputes the fifth element, in that it appears to state that Brown was not entitled to any benefits under FMLA only because of the lack of notice, but Brown will address the element at length, in any event. The following is the proper analysis under the <u>Cavin</u> standard.

**1. Brown was an "eligible employee" at the commencement of her leave time on September 20, 2005.**

Brock was, as of September 20, 2005, an "eligible employee" as that is defined by the FMLA. (Brown Complaint ¶18; HCF Answer ¶18)

**2. HCF was at all relevant times an "employer" under the FMLA.**

HCF, at all relevant times, employed more than fifty (50) persons. (Brown Complaint ¶17; HCF Answer ¶17)

8

### 3. Brown was entitled to take leave from March 21-24, 2005, to care for her father who had a serious health condition.

The FMLA regulations state that an employee's parent's "serious health condition" is proven by a period of incapacity of more than three (3) consecutive calendar days, and continuing treatment by a caregiver. 29 C.F.R. §825.114(a)(2). HCF admits that it granted FMLA-protected leave to Brown to care for her father, and thereby has acknowledged that Brown's father had a serious health condition under the FMLA that warranted Brown's care. Brown states with certainty that she was caring for her father from March 21-23, 2005, and HCF has no evidence to dispute that assertion.

29 U.S.C. §2612 states, in pertinent part:

(a) In general.

(1) Entitlement to leave. Subject to section 103 [29 USCS § 2613], an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

Brown's father's spinal stenosis was a chronic and permanent serious health condition, and Brown's father needed constant care from family members, and the family member called upon often was Brown. (Brown Aff. ¶ 3)

### 4. Brown gave proper notice of her FMLA-protected absences.

It is undisputed that Brown notified HCF of an FMLA-related reason in a timely fashion for every day *for which she reasonably knew she was scheduled* that she would need time off to care for her father. *see* 29 C.F.R. §825.302 and .303. (Brown Aff. ¶¶ 6 and 9) It is axiomatic that Brown is required to give FMLA-required notice only for days she reasonably knows she was

9

required to work. Unsurprisingly, Brown is unable to locate case precedent stating that notice is unnecessary if the employee was not on the work schedule to begin with. It is not shocking that the FMLA regulations also fail to address this issue.

The only case precedent that appears to remotely address a similar issue is a Title VII case in which it was seen as potentially pretextual to penalize an employee who failed to work overtime that was not properly scheduled under the employer's normal overtime procedures. Kent v. Masterbrands Cabinets, Inc., Case No. 2:05cv00037, 2007 U.S.Dist. LEXIS 7531 (M.D.Tenn. February 1, 2007). HCF failed to follow its normal procedures of calling Brown to inform her of the need that she work March 23, 2007. (Schwier Tr. 18-19; Brown Aff. ¶ 8) Had HCF made that call, Brown would have told them she needed to care for her father, and thereby given reasonable notice as soon as practicable under 29 C.F.R. §825.303(a).[2] (Brown Aff. ¶ 11) Brown never got that opportunity. Brown relies on the Court's common sense to ascertain that an employee cannot be held to the FMLA's notice standards if that employee reasonably believed she was not scheduled to work, the employer failed to follow normal procedures in informing her of the expectation that she work, and the employee therefore had no reason to believe she was required to work.

### 5. Brown was denied her right not to have the consequences of an FMLA-protected absence used as a "negative factor" causing her discharge, and in not being discriminated against for using FMLA-protected leave rights.

Initially, March 23, 2005, would have been an FMLA-protected absence had HCF properly informed Brown that it needed her to work that day. (Brown Aff. ¶ 11) Strangely, The "2005 Attendance Controller" record-keeping sheet HCF kept on Brown designates both March

---

[2] In fact, HCF would have allowed her to refuse work without penalty even if FMLA leave was not a factor. (Brown Aff. ¶ 8; Schwier Tr. 19, 22)

10

22 and 23, but not March 21, as "FM," which reasonably appears to mean FMLA-protected. (Ex. 3) Potentially just as important, however, is the fact that HCF assumed that Brown would be aware of work-related actions that occurred during a time that Brown had clearly given notice of the need for what HCF admitted was FMLA-protected leave. The schedule for March 23, 2005, was posted some time after Brown left work at 7:00 a.m. on March 21, 2005. (Brown Aff. ¶ 11) Brown then took FMLA-protected leave on March 21, 2005, and clearly noticed HCF that she was also taking care of her father on March 22, 2005 (though her notice was unnecessary, as she was not scheduled to work that day). (Brown Aff. ¶¶ 9-10) The schedule for March 23, 2005, must have been posted some time during one of those days. To expect Brown to ascertain her need to appear on March 23, 2005, is to presume a requirement that she observe the schedule that was posted while she was on FMLA-protected leave. This is a requirement that Brown perform a work-related activity while on FMLA-protected leave. An employer cannot require an employee to perform work-related functions while on FMLA leave. *see* Arban v. West Publ'g Corp., 345 F.3d 390, 402-03 (6th Cir. 2003) (salesman being required to call a customer while on leave constituted interference); Kesler v. Barris, Sott, Denn & Driker, PLLC, Case No. 04-40235, 2008 U.S.Dist. LEXIS 31577 (E.D.Mich. April 17, 2008) (employer questions to employees while on FMLA leave constituted a requirement to perform work, and is interference); McConnell v. Swifty Transport, Inc., Case No. 2:04-cv-153, 2005 U.S.Dist. LEXIS 15565, *22-23 (S.D.Ohio July 29, 2005) (employer questions to employee during FMLA leave constituted requirement to perform work, and was interference).

    Any act of interference is a denial of Brown's benefits under the FMLA. Any act of unlawful interference that leads to discharge is actionable and entitles Brown to damages under the FMLA. 29 U.S.C. §2617 states, in pertinent part:

>     (a) Civil action by employees.
>       (1) Liability. Any employer who violates section 105 [29 USCS § 2615]
>     shall be liable to any eligible employee affected--
>         (A) for damages equal to--
>           (i) the amount of--
>             (I) any wages, salary, employment benefits, or other compensation
>               denied or lost to such employee by reason of the violation

"[B]y reason of the violation" has been further clarified by the Sixth Circuit Court of Appeals that "a termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." Cavin, at 726, *citing* Barnett v. Revere Smelting & Refining Corp., 67 F. Supp. 2d 378, 388 (S.D.N.Y. 1999). A chain of events brought about by a violation of the FMLA is actionable under the FMLA. *See* Wysong v. Dow Chem. Co., 503 F.3d 441, 447-48 (6th Cir. 2007). Brown lost her job due to the fact that she did not know she was scheduled to work on March 23, 2005, i.e. she did not give notice of her absence due to not knowing she needed to do so. Brown did not know she was scheduled to work on March 23, 2005, because the schedule was posted while she was off on FMLA leave. In addition, HCF failed to follow its normal practice of calling Brown to inform her that she had been scheduled for March 23, 2005, which can arguably be attributable to its demonstrated animus towards her usage of FMLA leave. HCF's demand that Brown make an affirmative action to determine if she was scheduled for this "pick-up" day was, in and of itself a violation of the FMLA.

The alleged "no-call/no-show" absence of March 23, 2005, was the final "point" that caused Brown's discharge under HCF's no fault attendance regimen. Use of an absence caused by FMLA in a no fault attendance regimen is unlawful. 29 C.F.R. §825.220(c). There is no way one can escape the conclusion that there is at least genuine dispute of material fact that Brown was discharged because of a chain of events involving HCF's interference with Brown's FMLA

12

rights. This means that it is credible that Brown can prove that HCF somehow used the leave against in an unlawful manner, as provided in the FMLA regulations.

### C. The issue of Brown's alleged "misrepresentation" on her application for employment is an "after-acquired evidence" issue that does not affect liability, and should not cause the Court to grant summary judgment on that ground.

While it appears evident that Brown misstated her employment history on her application to HCF, this cannot be used as anything more than a potential bar to damages after the date that HCF discovered the misstatements, i.e. January of 2008. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 362 (1995). This Court would be committing reversible error to decide liability (or "no remedy") on this premise, as explained by the Sixth Circuit Court of Appeals:

> The district court relied on McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 362 (1995), to find that Bennett Enterprises's after-acquired evidence of Quinn-Hunt's misappropriation of confidential documents barred any recovery under anti-discrimination statutes. This finding was erroneous. In McKennon, the Supreme Court held that an absolute rule barring all recovery of backpay, where an employer later discovered evidence which would have justified dismissal, would be inappropriate because it would undermine the intent of anti-discrimination laws. McKennon, 513 U.S. at 362. The Court determined that the appropriate measure of backpay, in these circumstances, "should be a calculation . . . from the date of the unlawful discharge to the date the new information was discovered." Id. In so holding, the McKennon Court emphasized the importance of "forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from . . . discrimination."

Quinn-Hunt v. Bennett Enterprises, Inc., 125 Fed. Appx. 205, 207 (6th Cir. 2005). HCF's attempt to prejudice the Court against Brown by leading off its argument with this issue must be limited to its proper legal effect, and cannot be a bar to liability or all damages.

13

### D. Brown's mitigation efforts are a question of damages, not liability, and also a jury question and not a question of law.

It is axiomatic that mitigation is an issue of damages, and not of liability. In deciding whether a plaintiff acted reasonably to mitigate, juries must consider the totality of a wide range of circumstances. E.g., Equal Employment Opportunity Comm'n v. Pape Lift, Inc., 115 F.3d 676, 685 (9th Cir. 1997) ("[C]ourts have consistently based a determination of whether a plaintiff's efforts to procure suitable work were reasonable on that individual's particular circumstances and characteristics."); Equal Employment Opportunity Comm'n v. Kallir, Philips, Ross, Inc., 420 F. Supp. 919, 925 (S.D.N.Y. 1976) ("The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct."). And see CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES 128, 134 (1935) ("A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him...."  The settled law of the Sixth Circuit setting forth HCF's burden of proof on the affirmative defense of failure to mitigate is explained as follows:

> Mitigation of damages is an affirmative defense upon which the employer bears the burden of proof. NLRB v. Westin Hotel, 758 F.2d 1126, 1130 (6th Cir. 1985). The employer's burden of proof in attempting to show a failure to mitigate has been defined as follows:
>
> A former employer meets its burden of proof of "mitigation of damages" if the former employer proves that (a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of these comparable jobs.
>
> Black v. School Committee of Malden, 341 N.E.2d 896, 900 (Mass. 1976).

14

> See also Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 624 (6th Cir. 1983), cert. denied, 466 U.S. 950, 80 L. Ed. 2d 537, 104 S. Ct. 2151 (1984).
>
> \*   \*   \*   \*   \*
>
> The defendants' burden in this regard is not satisfied by showing that Dushaw could have taken some further actions in seeking new employment. **It is always the case that an individual could have taken some further action. Rather, the defendants must show that Dushaw's course of conduct was so deficient as to constitute an unreasonable failure to pursue available employment opportunities.** (emphasis added)

Dushaw v. Roadway Express, 816 F.Supp. 1229, 1234 (N.D.Ohio 1992). Essentially, the alleged failure of Brown to apply for certain jobs goes to the question of whether that failure was reasonable or unreasonable under the circumstances, which is not a matter of law, but a matter of fact. *See* Dushaw, at 1234. Brown has a right to explain the reasons for her actions to the finders of fact, i.e. the jury.

**IV. Conclusion**

There is a genuine dispute of material fact as to whether HCF's acts of unlawful interference with FMLA rights led to Brown being discharged which would enable a reasonable jury to find in Brown's favor. HCF's Motion for Summary Judgment must be DENIED in toto.


Respectfully submitted,

s/ Gary A. Reeve
Gary A. Reeve (0064872)
Trial Attorney for Plaintiff
Reeve & Knoll
98 Hamilton Park
Columbus, Ohio 43203
(614) 228-2050

15

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Courts through the CM/ECF system which will send notification of such filing to Defendant's counsel via electronic mail.

s/ Gary A. Reeve
Gary A. Reeve
